# United States Court of Appeals

## For the First Circuit

No. 02-1010

NORMA I. MAYSONET-ROBLES; ANGEL RAMON MARTINEZ-DOMINGUEZ;
CARMEN M. ROBLES-COLLAZO; LYDIA HERNANDEZ-DE-LEON;
CAMILO GINEZ-PEREZ; JESUS OCASIO-DE-LA-ROSA; for themselves and
on behalf of a class of similarly situated individuals,

Plaintiffs-Appellants,

v.

ANTONIO J. CABRERO, as Trustee for Urban Renewal and
Housing Corporation, Puerto Rico,

Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini, Senior District Judge]

Before

Boudin, Chief Circuit Judge,
Howard, Circuit Judge,
and Shadur,[*] Senior District Judge.

Robert N. Hill, for appellants.

Eugenia I. Orsini Herencia, for appellee.

March 14, 2003

---

[*]Of the Northern District of Illinois, sitting by designation.

**SHADUR, <u>Senior District Judge</u>.**   In January 1997 this action was brought on behalf of a putative class comprising homeowners and tenants of a low income housing complex in Manati, Puerto Rico, who sued Antonio Cabrero as Trustee for the Urban Renewal Housing Corporation Accounts Liquidation Office of Puerto Rico (the "Office"), an entity created in 1991 to liquidate the proceeds of the extinct Puerto Rico Urban Renewal and Housing Corporation ("CRUV")(Act 55, August 9, 1991, 17 P.R. Laws Ann. §§27-27t).   Plaintiffs sued under 42 U.S.C. §§1983 and 1985 and added, under the auspices of 28 U.S.C. §1367(a), a number of state law claims alleging that CRUV used, and failed to disclose to them the presence of asbestos and lead within, the units.

After two earlier motions to dismiss had been denied, the Office filed a third motion to dismiss--this time informing the district court and Plaintiffs that in the interim the Puerto Rico Legislature had passed Act 106, which had dissolved the Office and transferred CRUV's assets to the Department of Housing of the Commonwealth of Puerto Rico ("Department") effective June 30, 1998 (17 P.R. Laws Ann. §§27aa-27jj).   Because the Office said that Department was now the real party in interest, it urged that as such Department was immune from suit under the Eleventh Amendment. Later the Office amended its motion to assert that the Commonwealth of Puerto Rico ("the Commonwealth" or "Puerto Rico") was the

Office's true successor, coupling that amendment with a reassertion of Eleventh Amendment immunity.

After reviewing the parties' submissions, the district court[1] issued an October 26, 2001 opinion and order stating that Department should be substituted for the Office as a successor in interest pursuant to Fed. R. Civ. P. ("Rule") 25(c). In substantive terms that opinion went on to hold the action barred by the Eleventh Amendment because Department, as an arm of the state, enjoyed immunity from suit--and that despite its interjection into the pending litigation as a successor to a party that had not been entitled to immunity under the Eleventh Amendment. Accordingly the district court granted the Office's amended motion to dismiss, and Plaintiffs now appeal. We affirm the district court's dismissal of the action on such immunity grounds.

<u>Standard of Review</u>

Whether the district court correctly held that Department enjoyed immunity under the Eleventh Amendment--or more precisely, under the limitation that the States' sovereign immunity imposes on the federal judicial power established in Article III (see, e.g., <u>Pennhurst State Sch. & Hosp.</u> v. <u>Halderman</u>, 465 U.S. 89, 98-99, 116-17 (1984))[2]--is a question of law. We therefore review the lower

_____

[1]   In July 1999 the case was reassigned to Senior Judge Gierbolini after Judge Cerezo had recused herself.

[2]   Because it has become customary to use the Eleventh Amendment as a shorthand reference even though it does not literally apply by its terms to suits against a State (or in this

-3-

court's ruling de novo (see Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 22 (1st Cir. 2001)).

Background

Because this appeal presents a pure jurisdictional question, it is unnecessary to recite the facts as they pertain to the merits of Plaintiffs' allegations. Instead we will review the bidding as to the relevant agency history and the procedural path of this litigation, then turn to the law.

CRUV was created by the Puerto Rico legislature as a public corporation in 1957 to administer and develop low-cost private housing construction in the Commonwealth. In 1991 the legislature dissolved CRUV (by Act 55 of August 9, 1991, 17 P.R. Laws Ann. §§27-27t), instead creating the Office and charging it with overseeing the liquidation of CRUV's accounts and the transfer of records and documents to Department. Among other provisions, the Office was granted the authority to sue and be sued, with the understanding that it would exist only so long as necessary for CRUV's liquidation (17 P.R. Laws Ann. §27r).

Plaintiffs' 1997 Complaint asserted a number of claims against the Office that stemmed from CRUV's use of asbestos and

instance Puerto Rico) by its own citizens, this opinion will also speak in Eleventh Amendment terms in many instances. When it refers to "sovereign immunity," it does so consistently with the ongoing and current jurisprudence of the Supreme Court's majority opinions, exemplified by such cases as Pennhurst and Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985)(citing and quoting Pennhurst in those terms).

-4-

lead in its public housing units and its failure to disclose that use to Plaintiffs. Plaintiffs then amended their Complaint to clarify that the suit was brought against the Office for its own acts of alleged misconduct as well as in its capacity as the successor to CRUV.

After a first motion to dismiss on grounds unrelated to immunity was denied, the Office filed a second motion to dismiss in August 1997 on the predicate that it was immune from suit under the Eleventh Amendment. While that motion was pending, Plaintiffs sought a preliminary injunction to prevent the Office from reducing its legal claims reserve and transferring its assets to the Commonwealth's treasury.

On September 3, 1998 the district court ruled on those motions. First it denied the motion to dismiss, ruling that the Office was not an arm of the state entitled to immunity under the Eleventh Amendment. Then it denied Plaintiffs' motion for preliminary injunction, but it ordered the Office to ensure that CRUV's assets would remain available should they be necessary to satisfy a judgment in this case.

It turned out that two months before the issuance of those rulings Act 106 had dissolved the Office and had effectively transferred CRUV's millions of dollars in surplus funds, including the millions that had been set up as a reserve fund for its legal liabilities, to Department. Based on that legislation, the Office

filed a third motion to dismiss on September 15, 1998--this time asserting that Department, now the real party in interest, was entitled to Eleventh Amendment immunity. Responding to that motion, Plaintiffs requested that the district court substitute Department for the defunct Office under Rule 25(d)(1) and urged that such substitution did not oust the court of federal jurisdiction or permit Department to reassert Eleventh Amendment immunity. Then the Office amended its motion to assert that the Commonwealth, rather than Department, was the proper defendant under Act 106 and that it was immune from the suit regardless of its successor status.

As stated earlier, the district court bought into the Office's Eleventh Amendment immunity argument as to Department without having to take that last step of treating the Commonwealth as the proper party defendant. Because the district court concluded that Department had not waived or otherwise forfeited that immunity by its having succeeded the properly sued Office, the court granted the motion to dismiss.

Although Plaintiffs now appeal that involuntary dismissal, certain aspects of the district court's ruling are not challenged before us. Neither party has appealed the district court's application of Rule 25(c) to substitute Department for the Office as a successor in interest. Neither do they dispute the conclusion that Department, an executive department of the

government of Puerto Rico lacking an independent juridical personality (see Fred Reyes v. Estado Libre de Puerto Rico, 2000 TSPR 49 (P.R. 2000)), is generally sheltered by Puerto Rico's immunity from federal suit. Instead the issue on appeal is whether Department, interjected into the ongoing litigation by way of a Puerto Rican statute, may successfully assert such immunity when it could not have been invoked by its predecessor in interest, the Office. We now turn to that question.

Eleventh Amendment

Under the Eleventh Amendment the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Long interpreted as an affirmation of state[3] sovereign immunity as a limit on Article III's grant of federal jurisdiction, the principles that Hans v. Louisiana, 134 U.S. 1 (1890) drew from that amendment (despite its literal text) also bar a citizen from bringing a federal court action against his or her own State. Sovereign immunity for suits "against one of the United States" also extends to bar suits against state agents and instrumentalities when the action is in essence one for the

_____

[3] This circuit has consistently held that Puerto Rico enjoys immunity from suit equivalent to that afforded to the States under the Eleventh Amendment (see Arecibo Cmty. Health Care, 270 F.3d at 21 n.3). For the reasons stated later in the text, we decline Plaintiffs' invitation to reconsider that principle.

-7-

recovery of money from the State (<u>Regents of the Univ. of Cal.</u> v. <u>Doe</u>, 519 U.S. 425, 429 (1997)).

There are, however, two general exceptions to the thus-extended reach of the Eleventh Amendment (<u>College Sav. Bank</u> v. <u>Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999)). First, Congress may abrogate a State's immunity by expressly authorizing such a suit pursuant to a valid exercise of power (<u>id</u>.). Second, a State may waive its sovereign immunity by consenting to be sued in federal court (<u>id</u>.). At issue here is the second of those two potential exceptions: whether Puerto Rico waived its immunity so as to permit this federal court litigation.

Before we turn to Plaintiffs' waiver argument, we will first address Plaintiffs' separate contention that Department should not be entitled to raise the shield of immunity because it entered the case midstream as a successor to the Office, an entity that was itself outside the scope of that immunity. Plaintiffs assert that because federal jurisdiction was properly established over the Office when the suit was initiated, it is not subject to ouster by subsequent events. Relatedly Plaintiffs argue that Department, as successor to the Office under Rule 25 (c), cannot invoke immunity because the Office itself was not entitled to do so. Although creative, Plaintiffs' contentions are based on jurisdictional and successorship authorities that insufficiently

address the unique nature of the States' sovereign immunity in the context of federal litigation.

Plaintiffs seek to apply the so-called "time of filing" rule here--the concept that federal jurisdiction attaches at the time when the action is commenced and cannot be ousted by later developments. To be sure, that principle is well established for subject matter jurisdiction (see, e.g., Valderon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1985)(diversity of citizenship); Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4-6 (1st Cir. 1995)(amount in controversy); Ching v. Mitre Corp., 921 F.2d 11, 13 (1st Cir. 1990)(federal question jurisdiction)) as well as for personal jurisdiction (see, e.g., Explosives Corp. of Am. v. Garlam Enters. Corp., 817 F.2d 894, 906 (1st Cir. 1987)). Successorship law is also in accord, for federal jurisdiction is retained over Rule 25(c) successors in interest that would not otherwise be subject to suit in federal court (see, e.g., Freeport-McMoRan Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1990)(per curiam); Explosives Corp., 817 F.2d at 906). Moreover, it is true that Rule 25 (c) substitution implements a discretionary determination by the trial court to facilitate the conduct of the litigation, so it is a procedural vehicle "not designed to create new relationships among parties to a suit" (Pacamor Bearings, Inc. v. Minebea Co., 892 F. Supp. 347, 360 (D.N.H. 1995)). As such, "the transferee is brought into court

-9-

solely because it has come to own the property in issue. The merits of the case and the disposition of the property are still determined vis-a-vis the originally named parties" (Minn. Mining & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1263 (Fed. Cir. 1985).

But none of those cases addresses the application of such rules to a State's immunity from federal suit,[4] and we find Plaintiffs' attempted analogies to the current case's context ultimately unconvincing. As to jurisdiction, while the Eleventh Amendment has been described as a jurisdictional bar with a "hybrid nature," similar in some respects to personal jurisdiction and to subject matter jurisdiction in others, it is on all fours with neither (see Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 394 (1998)(Kennedy, J., concurring).[5] Rather it is "a specific text

---

[4] Plaintiffs do point to Anderson & Middleton Lumber Co. v. Quinault Indian Nation, 901 P.2d 1060, 1063-64 (Wash. Ct. App. 1995) as applying the "time of filing" rule in the sovereign immunity context. Anderson held that jurisdiction properly continued over a property action to partition and to quiet title despite Quinault Indian Nation's mid-litigation purchase of the land and its substitution as defendant for the prior landowners, private individuals. Although Anderson ruled on personal jurisdiction grounds and did not separately address waiver, it specifically noted that upon bringing suit the plaintiff had filed a lis pendens (providing notice that the outcome of the action would bind subsequent transferees) and that the warranty deed for the tribe's purchase of the land made conveyance subject to that lis pendens. All of this suggests that, as opposed to the instant case, the tribe chose to purchase the land subject to the specific court action--voluntary conduct that waived its immunity from that suit.

[5] Justice Kennedy's Schacht concurrence argues in part that the Court should adjust its Eleventh Amendment jurisprudence to track more closely its treatment of personal jurisdiction (Schacht, 524 U.S. at 395). In particular, such a revision would remove the

-10-

with a history that focuses on the State's sovereignty vis-a-vis the Federal Government" (Lapides, 122 S.Ct. at 1646). Unlike a private individual or corporation, a State retains its sovereign immunity as a "personal privilege" and, whether it is the original defendant or is added as a party later, it cannot be sued involuntarily (Clark v. Barnard, 108 U.S. 436, 447-48 (1883)).

As to successorship, Department is an arm of the State, regardless of its late arrival at the courthouse as a successor in interest, and it must be accorded the same respect due a State under the Eleventh Amendment (see Kroll v. Bd. of Trustees of the Univ. of Ill., 934 F.2d 904, 909 (7th Cir. 1991); Williamson Towing Co. v. Illinois, 534 F.2d 758, 760-61 (7th Cir. 1976)). To prevail here, then, Plaintiffs must establish that Puerto Rico waived its own immunity in light of those legal principles by dissolving the Office into Department. And it is to Plaintiffs' exposition on that topic and to the relevant law on waiver that we now turn.

Plaintiffs argue that Puerto Rico waived its immunity with respect to those suits against the Office that were pending when Act 106 went into effect. Early on, Clark, 108 U.S. at 447-48 established that a State may waive its sovereign immunity by

---

unfair litigation advantages that arise from allowing States to raise the bar of Eleventh Amendment immunity for the first time on appeal (id. at 394). Although Lapides v. Bd. of Regents of Univ. Sys., 535 U.S. 613, 122 S.Ct. 1640, 1645 (2002) addressed some of Justice Kennedy's concerns, its relatively narrow holding did not alter the hybrid nature of the Eleventh Amendment: States' immunity under that Amendment remains sui generis.

consenting to a suit in federal court. Because the sovereign's decision to waive such immunity to suit must be "altogether voluntary" (College Sav. Bank, 527 U.S. at 675, quoting Beers v. Arkansas, 61 U.S. (20 How.) 527, 529 (1858)), the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one" (College Sav. Bank, id., quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)).

College Sav. Bank commands that such waivers must be unequivocal. In the case of waiver through a state statute or constitutional provision, the State must express in unmistakably clear language, allowing for no other reasonable construction, that it intends to submit itself to the jurisdiction of the federal courts (id. at 678). Alternatively, a State may waive its immunity by invoking federal jurisdiction voluntarily though affirmative litigation conduct (id. at 675-76; see also Lapides, 122 S.Ct. at 1644).

We do not find that Puerto Rico made such an unequivocal waiver here in either of those ways. First, as the district court correctly concluded, Act 106 does not include clear language expressing Puerto Rico's intent to submit to the jurisdiction of the federal court for suits against the Office. To be sure, Act 106 does provide that lawsuits pending against the Office at the time of enactment are to be taken over by Department. To that end

-12-

Act's Article 4 mandates the transfer to Department of the Office's "records, assets, and liabilities" and provides that "Department shall not be responsible for any claim beyond those passed on by the Office." Article 5 requires that an inventory of pending lawsuits be delivered to Department. Lastly, Article 7 orders the Department of Justice to support Department as requested in such lawsuits and reads in part:

> The Department of Housing shall have the same rights and powers, except for the capacity to sue and be sued, and may raise the same defenses used by the Office in case of any litigation or claim related to the transferred assets....

But none of that language about pending lawsuits conveys Puerto Rico's unequivocal consent for such pending litigation to continue in federal court (see Kroll, 934 F.2d at 909-10, reaching the same conclusion as to statutory language governing the merger of an athletic association with an arm of the State that was even more explicit as to the continuation of pending lawsuits).

Although one permissible reading of Act 106 may be that claims against the Office should not be affected at all by its dissolution, another--also permissible--would allow for the continuation of such pending lawsuits against Department in Puerto Rico's courts, but not in federal courts.[6] Indeed, it does not

---

[6] 32 P.R. Laws Ann. §3077 (1999) authorizes individuals to sue Puerto Rico in the Commonwealth's own courts according to a number of conditions. But nothing in that statute waives Puerto Rico's sovereign immunity from suit in federal court without its consent, as College Sav. Bank, 527 U.S. at 670 would require. And

require a particularly jaundiced eye to deduce from the Act's text that the Puerto Rico legislature acted to dissolve the Office and transfer the claims to Department with the precise goal of raising the shield of immunity.[7]  Such jurisdictional game-playing would be beyond the pale for any private litigant, and it is not a new strategy for the Commonwealth (see, e.g., Futura Dev. of Puerto Rico v. Estado Libre Asociado de Puerto Rico, 144 F.3d 7, 14 (1st Cir. 2001), commenting on the "manifest injustice" created by Puerto Rico's clever use of "sovereignty to shield itself from the fair consequences of its actions").  But it has been nearly a century and a half since Beers, 61 U.S. at 529 held that because the waiver of such immunity is entirely within the sovereign's prerogative, a State may alter the conditions of waiver and apply those changes to torpedo even pending litigation.

As the record reflects, Plaintiffs' February 11, 1998 motion for a preliminary injunction mentioned the recent introduction of the bill that ultimately ripened into Act 106, which dissolved the Office and transferred its assets to

---

the language in Act's Article 7 that excepts Department's "capacity to...be sued" from the "same rights and powers" possessed by the Office could certainly be read as an intended preservation of the right of sovereign immunity--though we express no ultimate view, of course, as to its amenability to suit in the courts of Puerto Rico.

[7]   It is true that Act 106 was enacted while Plaintiffs' second motion to dismiss was still pending.  But the risk remained that the district court would rule--as it did approximately two months later--that the Office was not entitled to the protection of Puerto Rico's own immunity.

Department--to the Commonwealth in legal effect. Because the preliminary injunction motion was still under advisement at the time Act 106 became law, we are not confronted with the knottier problem that would have been posed if (say) an injunction order had been entered prohibiting the Office's transfer of the funds at issue, followed by the enactment of a statute that compelled such transfer by terminating the Office's existence. Such a scenario might, for example, have placed the Supremacy Clause and the principle of sovereign immunity on a collision course. But as matters developed, the transfer of funds to Department had become a fait accompli by the time the Office tendered its third (and successful) motion to dismiss the district court.

Plaintiffs' attempt to argue that Puerto Rico waived its immunity through affirmative litigation conduct fares no better. It has long been established that a State's conduct in a federal lawsuit can constitute waiver: "[W]here a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment" (Gunter v. Atlantic Coast Line R.R., 200 U.S. 273, 284 (1906); see also Porto Rico v. Bonicio Ramos, 232 U.S. 627 (1914), finding a waiver when the Commonwealth petitioned to be a claimant in an estate proceeding and obtained a ruling from a federal trial court); Paul N. Howard Co. v. Puerto Rico Aqueduct

-15-

Sewer Auth., 744 F.2d 880, 886 (1st Cir. 1984), finding that a government entity assumed arguendo to be entitled to immunity had waived it by appearing and filing a counterclaim and third-party complaint in the federal lawsuit).

Most recently Lapides, 122 S.Ct at 1643 reconfirmed that a State's voluntary invocation of federal jurisdiction amounts to a waiver of Eleventh Amendment immunity. Lapides, id. at 1644 distinguished such a waiver from the type of constructive statutory waiver repudiated by College Sav. Bank, explaining that it "rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." But as with statutory waiver, the State's litigation conduct must be unambiguous (id., explaining that the "relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver"). Thus the State's actions must evince a clear choice to submit its rights for adjudication by the federal courts (see, e.g., Lapides, id. (by removing an action to the federal court); Gardner v. New Jersey, 329 U.S. 565, 574 (1947)(by filing a proof of claim in a bankruptcy proceeding)).

In this instance Puerto Rico's involvement in the federal action does not constitute waiver by litigation conduct. Neither the Office nor Department has taken any action in this lawsuit that

-16-

may be fairly described as voluntarily submitting the Commonwealth's rights for adjudication by the federal court. As for the Office, it has yet to answer Plaintiffs' complaint, let alone take steps akin to filing a counterclaim or third-party complaint. Nor is the automatic substitution of Department for the Office--unlike an election to remove a case from a state court to a federal court--a clear invocation of federal court jurisdiction. Although the Office's motions urged that either Department or Puerto Rico was the real party in interest, that was coincident with their raising the shield of immunity. And Department's entry into the case as the Office's successor, which was employed only to advance that same immunity contention, also cannot be labeled as a voluntary submission. In short, anything that might be characterized as affirmative litigation conduct goes back to the statute itself. And while the Commonwealth's Act 106 chose to interject Department into all pending litigation against the Office, it has already been said that the statutory language does not unequivocally consent to the continuation of any such suits in federal court.

It is surely troubling that Puerto Rico's actions here implicate the concerns of inconsistency and unfairness that are at the heart of the waiver-by-litigation-conduct doctrine. But we do not read Lapides as sanctioning a different or lesser test for the clarity with which the State must consent to federal jurisdiction

-17-

in the context of waiver by litigation, as compared with waiver by statute. Instead Lapides redirects our focus on such clarity to Puerto Rico's litigation conduct. And once again that conduct, in this instance, is solely in implementation of the statute itself. So any finding of waiver via the conduct of this litigation, in the absence of the requisite clear language in Act 106 showing Puerto Rico's intent to waive immunity from suit in federal court, would fly in the face of the prevailing sovereign immunity jurisprudence on statutory waiver.

One final issue remains for our resolution: Plaintiffs' contention that Puerto Rico is not a "State" within the meaning of the Eleventh Amendment. Even though Puerto Rico is an incorporated territory of the United States, its government has always been considered a sovereign entity entitled to immunity from suit without consent (see Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 273 (1913)). And although Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 141 n. 1 (1993) reserved ruling on whether the Eleventh Amendment applies to Puerto Rico, it is the settled law of this Circuit that Puerto Rico enjoys the same immunity from suit that a State has under the Eleventh Amendment (see Arecibo Cmty. Health Care, 270 F.3d at 21 n.3).

Plaintiffs urge that Alden v. Maine, 527 U.S. 706 (1999) requires us to reconsider that conclusion.[8] Alden teaches that the

_____

[8] Three post-Alden decisions in this Circuit (Arecibo Cmty. Health Care, Inc., 270 F.3d at 21 n.3; U.S.I. Props. Corp. v. M.D.

-18-

States' sovereign immunity from suit in their own courts is embodied in the structure and history of the Constitution, not simply the Eleventh Amendment, so that it is beyond congressional power to abrogate through Article I legislation.  Plaintiffs assert that unlike the States' sovereign immunity, which Alden grounded in the Constitution as well as the Eleventh Amendment, Puerto Rico's common-law sovereign immunity is a creation of the courts and may therefore be overcome by federal statute pursuant to Congress' power to regulate the territories (U.S. Const. art. IV, §3, cl. 2). According to Plaintiffs, Congress abrogated Puerto Rico's court-created sovereign immunity when it granted Plaintiffs a federal forum for their Section 1983 claims.

We need not reach that constitutional question, however, because Plaintiffs' argument falls of its own weight.   Whether or not Puerto Rico's long-held sovereign immunity is constitutional or common-law in nature, it has not been abrogated by Congress here. Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero, 426 U.S. 572 (1976) established that Congress granted the United States District Court in Puerto Rico federal jurisdiction to enforce the provisions of Section 1983 on a basis equal to that conferred on district courts in the States.   But the grant of a

Constr. Co., 230 F.3d 489, 495 n.3 (1st Cir. 2000); Jusino Mercado v. Puerto Rico, 214 F.3d 34, 39 (1st Cir. 2000)) have adhered to the position stated in the preceding paragraph of the text. Indeed, the first and third of those cases specifically cite Alden in their exposition of Eleventh Amendment law.

federal forum does not alone constitute an abrogation of sovereign immunity, even if it is merely court-created.

Even on the assumption that Congress acts pursuant to a valid exercise of power, it must still "unequivocally express[ ] its intent to abrogate" a State's immunity (Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996)[9]; Quern v. Jordan, 440 U.S. 332, 343 (1979)), and Plaintiffs can point to no such evidence of Congress' intent here. Quern, id. at 345 concluded that Section 1983, although enacted pursuant to the Fourteenth Amendment, did not abrogate the immunity of the States because there was insufficient evidence of Congress' desire to make States liable under that statute. And Examining Board, 426 U.S. at 581-98 carefully traced the history of Section 1983 and its accompanying statutory grant of federal jurisdiction as they applied to Puerto Rico and found no indication that Congress intended to treat Puerto Rico differently from the States (cf. Jusino Mercado, 214 F.3d at 44, holding that Congress in drafting the Fair Labor Standards Act did not intend to "intrude more profoundly on Puerto Rico's sovereignty than on that of the states").

Without speculating on the outer limits of Congress' constitutional power to regulate the territories, we conclude that

---

[9] Seminole Tribe and its progeny have not done away with that initial requirement for abrogation, but have rather added a second step to the judicial inquiry: whether Congress acted pursuant to a valid exercise of power. Because we find that Plaintiffs fall at the first hurdle, there is no need to approach (let alone overleap) the second.

Puerto Rico's immunity has not been overcome by federal statute in this case.  Thus nothing in Alden has any bearing on our analysis or conclusion here.

In reviewing what has occurred in this case and the conclusion we have perforce reached, we are constrained to say that the actions of the Puerto Rico executive agencies and legislature here have continued a distressing pattern of activity in seeking to avoid millions of dollars of established or potential liability--a pattern that this Court has twice labeled as "despicable" in earlier cases:  Futura Dev., 144 F.3d at 13 and U.S.I. Props., 230 F.3d at 501.  That conduct epitomizes the notion that was at the original core of sovereign immunity:  The King can do no wrong.  And in extending that notion to our democratic form of government, the courts do not seem to subscribe to the pre-Revolutionary-War view expressed in 1776 in Thomas Paine's Common Sense:

> [S]o far as we approve a monarchy...in America the law is king.  For as in absolute governments the king is law, so in free countries the law ought to be king; and there ought to be no other.

Under the caselaw the federal courts cannot serve as "king" to right any wrongs committed by the Puerto Rico government in its sovereign capacity.  As in U.S.I. Props., 230 F.3d at 501, we must leave it to the courts of the Commonwealth to correct any injustice.

-21-

## Conclusion

We AFFIRM the ruling of the district court dismissing Plaintiffs' suit as barred by Puerto Rico's immunity from suit in the federal courts.