[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12974

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-01154-CV-DLG


ASOCIACION DE EMPLEADOS DEL AREA
CANALERA (ASEDAC), MARIO LOPEZ, et al.,

Plaintiffs-Appellants,

versus

PANAMA CANAL COMMISSION, THE OFFICE
OF TRANSITION ADMINISTRATION ESTABLISHED
BY THE PANAMA CANAL COMMISSION,
et al.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 28, 2006)**

Before BLACK, BARKETT and COX, Circuit Judges.

BLACK, Circuit Judge:

Panamanian former employees of the United States in the Panama Canal Zone and their labor association, the Asociacion de Empleados del Area Canalera (ASEDAC), appeal the district court's dismissal of their action against the Panama Canal Commission (PCC) and the Office of Transition Administration (OTA) seeking back pay and other employment benefits allegedly owed the employees under the Panama Canal Treaty of 1977 and the Panama Canal Act of 1979. *See* 22 U.S.C. §§ 3601-3873. The district court dismissed the action because it determined Appellants' claims abated when, while their lawsuit was pending, Congress terminated the PCC and OTA without providing for a successor. Although we do not decide whether Appellants' claims for unpaid employment benefits were extinguished, we affirm based on our conclusions (1) the suit against the PCC and OTA abated when Congress terminated these entities, and (2) sovereign immunity precludes substitution of the General Services Administration (GSA) as a defendant.

## I. BACKGROUND

A.    *Historical Background*

Some historical background is necessary to place Appellants' appeal in proper context. Pursuant to the Panama Canal Treaty of 1977 (the Treaty), the United States agreed to restore Panamanian sovereignty over the Panama Canal

2

Zone on October 1, 1979, and the Republic of Panama granted the United States the right to manage and operate the Panama Canal until the Treaty's expiration on December 31, 1999. *See* Panama Canal Treaty, U.S.-Pan., Sept. 7, 1977, 33 U.S.T. 39. To implement the Treaty, Congress passed the Panama Canal Act of 1979 (the Act), which created the PCC as a wholly-owned United States corporation charged with managing and operating the Panama Canal for the duration of the Treaty. 22 U.S.C. § 3611(a). The Act created the "Panama Canal Revolving Fund" to finance the PCC, and directed the PCC to establish and administer an employment system in the Canal Zone "in accordance with and . . . subject to the provisions of the [Treaty] and related agreements." *See* *id.* §§ 3652, 3656, 3712. The Act also contained a limited waiver of the PCC's sovereign immunity. *Id.* § 3612a(c).

In 1992, Congress amended the Act in preparation for the Treaty's termination and the PCC's dissolution. *See id.* § 3714a. The 1992 amendment, among other things, directed the PCC to establish the OTA "to close out the affairs of the [PCC] that are still pending after the termination of the [Treaty]." *See id.* § 3714a(b) & note. The amendment also created the "Panama Canal Commission Dissolution Fund" for the PCC, and later the OTA, to use to pay costs associated with the dissolution, including "costs incurred or identified after the termination"

3

of the Treaty. *Id.* § 3714a(c). Pursuant to § 3714a(c)(6), the Panama Canal

Commission Dissolution Fund terminated on October 1, 2004, and any remaining

amounts in the fund were deposited into the general fund of the United States

Treasury.

On September 30, 2004, while Appellants' suit was pending, Congress

passed a joint resolution that amended the Act and terminated the PCC and OTA

as of October 1, 2004. *Id.* § 3712(e). Section 3712(e) also transferred the Panama

Canal Revolving Fund to the GSA and directed the GSA to use this fund to "make

payments of any outstanding liabilities" of the PCC.[1]

B.    *Procedural Background*

The ASEDAC is an association of Panamanian citizens who were former

employees of the PCC in the Panama Canal Zone prior to the Treaty's expiration.

The ASEDAC and its individual members filed their complaint against the PCC

and OTA on March 22, 2001, claiming the entities failed to pay certain

---

[1]Specifically, § 3712(e) states:
      (1) The Panama Canal Commission and the Office of Transition
Administration . . . shall terminate on October 1, 2004.
      (2) Upon termination pursuant to paragraph (1), the Panama Canal
Revolving Fund shall be transferred to the General Services Administration
(GSA). GSA shall use the amounts in the Fund to make payments of any
outstanding liabilities of the Commission, as well as any expenses associated with
the termination of the Office of Transition Administration and the Commission.
The fund shall be the exclusive source available for payment of any outstanding
liabilities of the Commission.

employment benefits required under Panamanian law as made applicable to the

PCC by the Treaty and the Act.[2]  Specifically, Appellants allege the PCC and OTA

violated the Treaty and the Act by failing to provide in accordance with

Panamanian law (1) an extra month's salary for every twelve months worked,

(2) severance pay, and (3) seniority pay.[3]

Appellees moved to dismiss the complaint, and while the motion was

pending, Congress enacted the joint resolution terminating the PCC and OTA.  *Id.*

§ 3712(e).  Appellees then notified the court of Congress's action and argued the

claims against the PCC and OTA abated under common law principles applicable

to wholly-owned United States corporations.  Appellants responded by moving

---

[2]Appellants' Third Amended Complaint also named the Secretary of the Army of the United States and the United States Department of Defense as defendants.  The district court dismissed the claims against these defendants for lack of subject matter jurisdiction.  Appellants have not appealed the district court's ruling in this respect.

[3]The district court initially dismissed Appellants' claims as preempted by the Civil Service Reform Act of 1978 (CSRA).  5 U.S.C. § 7121(a).  *Asociacion de Empleados del Area Canalera (ASEDAC) v. Pan. Canal Comm'n.*, 329 F.3d 1235, 1237 (11th Cir. 2003).  We reversed and remanded.  *Id.* at 1238-41 (following *Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002)).  The Ninth Circuit disagreed with our decision and held § 7121(a) "does not confer federal court jurisdiction over statutory and constitutional claims concerning employment-related matters within the scope of the negotiated grievance procedures of a federal employee's collective bargaining agreement."  *Whitman v. Dep't of Transp.*, 382 F.3d 938, 944 (9th Cir. 2004) *rev'd*, 547 U.S. __, __ S. Ct. __ (2006).  The Supreme Court recently reversed the Ninth Circuit's decision and remanded, stating:  "The question . . . is not whether 5 U.S.C. § 7121 confers jurisdiction, but whether § 7121 (or the CSRA as a whole) removes the jurisdiction given to the federal courts or otherwise precludes employees from pursuing remedies beyond those set out in the CSRA."  *Whitman*, 547 U.S. at __, __ S. Ct. at __ (citations omitted).

5

pursuant to Rule 25(c) of the Federal Rules of Civil Procedure to substitute the GSA as a defendant, arguing § 3712(e)(2) designated the GSA as PCC's successor-in-interest. The district court dismissed the action, concluding Appellants' claims against the PCC and OTA abated and Congress did not designate the GSA as a successor. The court also denied Appellants' request to substitute the GSA because Congress has not waived its immunity from suit.[4]

## II.  STANDARD OF REVIEW

We review the district court's determination of its subject matter jurisdiction de novo. *ASEDAC*, 329 F.3d at 1237-38. We review the denial of a motion for substitution of parties under Rule 25(c) of the Federal Rules of Civil Procedure for abuse of discretion. *See Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1357-58 (11th Cir. 1994). Because this case presents a question of statutory interpretation, we review the question presented de novo. *ASEDAC*, 329 F.3d at 1238.

---

[4]The district court dismissed the complaint against the PCC and OTA on the alternative ground Appellants' claims did not fall within the waiver of PCC's immunity from suit. Appellees did not advance this argument below and, on appeal, do not defend the district court's dismissal on this basis. Based on our resolution of this case, we need not address whether the Act waived PCC's immunity with respect to Appellants' claims.

## III. DISCUSSION

Our decision to affirm the district court's dismissal is compelled by well-settled common law principles respecting the dissolution of corporations and by equally well-settled principles of sovereign immunity. Succinctly stated, dismissal was appropriate because, under applicable common law principles, Appellants cannot maintain their suit against the PCC and OTA post-dissolution and, under principles of sovereign immunity, they cannot substitute the GSA as a defendant without Congress's express waiver of the GSA's sovereign immunity.

When a corporation dissolves, all pending suits by or against it abate, and no valid judgment may be rendered for it or against it, unless there is statutory authority extending the life of the corporation for litigation purposes. As the Supreme Court explained in *Oklahoma Natural Gas Co. v. Oklahoma*:

> It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of [a] natural person in its effect. It follows, therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as a plaintiff or defendant. To allow actions to continue would be to continue the existence of the corporation pro hac vice. But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation.

7

273 U.S. 257, 259, 47 S. Ct. 391, 392 (1927) (citations omitted); *see also Def.*
*Supplies Corp. v. Lawrence Warehouse Co.*, 336 U.S. 631, 634-35, 69 S. Ct. 762,
763 (1949) ("[A] time-honored feature of the corporate device is that a corporate
entity may be utterly dead for most purposes, yet have enough life remaining to
litigate its actions. All that is necessary is a statute so providing."); *Pendleton v.*
*Russell*, 144 U.S. 640, 644-46, 12 S. Ct. 743, 745 (1892); *First Nat'l Bank v.*
*Colby*, 88 U.S. (21 Wall.) 609, 615 (1874); *Marion Phosphate Co. v. Perry*, 74 F.
425, 427 (5th Cir. 1896).[5] Wholly-owned government corporations are no
exception to the common law abatement rule. *See Def. Supplies Corp.*, 336 U.S. at
634-36, 69 S. Ct. at 763-64 (applying the common law rule to a government
corporation).

There is no dispute Congress dissolved the PCC and OTA on October 1,
2004, while Appellants' suit was pending. 22 U.S.C. § 3712(e)(1). Thus,
according to the common law rule, Appellants' suit against these entities abated
unless Congress provided otherwise. The district court found "no explicit or
implicit expression of Congressional intent to prevent the abatement of any

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this
Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to
close of business on September 30, 1981.

lawsuit filed against the [PCC] or the OTA prior to their dissolution . . . either in the Panama Canal Act or any other congressional enactment." We agree.

Section 3712(e), which terminated the PCC and OTA, says nothing about pending lawsuits against the PCC and OTA. Instead, the statute provides that upon termination of the PCC and OTA, the Panama Canal Revolving Fund transferred to the GSA as the exclusive source available to the GSA "to make payments of any outstanding liabilities of the [PCC]." *Id.* § 3712(e)(2). Although Appellants concede § 3712(e) does not expressly address pending lawsuits, they contend Congress's command that the GSA pay "any outstanding liabilities" of the PCC is a sufficient statement of Congress's intent not to abate pending litigation against the PCC and OTA. We are not persuaded that when Congress directed the GSA to pay the PCC's outstanding liabilities it meant to prolong the PCC's or the OTA's existence beyond their dissolution date for litigation purposes. The statute's plain meaning is that Congress terminated the PCC and OTA without exception, and these entities ceased to exist for any purpose on October 1, 2004. The district court, therefore, did not err in dismissing the claims against the PCC and OTA.[6]

---

[6]The dissent argues the plain meaning of § 3712(e)(2)'s transfer of "any outstanding liabilities" of the PCC to the GSA is that Congress intended lawsuits against the PCC and OTA to survive. This is so, according to the dissent, because the common usage of the term

9

Having concluded Appellants cannot maintain their suit against the PCC and OTA, the issue becomes whether Congress provided for a successor that can stand in for these defunct entities as a defendant in this litigation. To this end, Appellants argue Congress designated the GSA as the entities' successor-in-interest and, therefore, the district court erred in denying their Rule 25(c) motion to substitute the GSA as a defendant. Much of Appellants' brief is devoted to arguing Congress's transfer of "any outstanding liabilities" of the PCC to the GSA is broad enough to transfer liability for Appellants' claims of unpaid employment benefits. What Appellants overlook, however, is that a transfer of liability for a claim from one government entity to another does not necessarily mean the transferee entity is amenable to suit. In other words, even if the GSA is now

---

"liabilities" includes "potential obligations from existing lawsuits." Dissenting Op. at 1-2, n.1. The dissent simply answers the wrong question. The question is not whether the statute "can be read to exclude existing lawsuits against the PCC." *Id.* at 1-2. As we explained, litigation against the PCC abates by operation of the common law respecting corporate dissolution. Thus, whether the statute may be read to permit the survival of Appellants' claims for unpaid employment benefits is not the dispositive question. It might very well be that Congress provided for the survival of Appellants' claims by obligating the GSA to pay them. We do not need to make that determination, however, because the issue is whether the statute altered the common law to allow the PCC's and OTA's continued existence for the purposes of pending litigation. A plain reading of the statute obligating the GSA to pay "any outstanding liabilities" of the PCC does not support the conclusion Congress meant to extend the existence of the PCC and OTA for the purpose of defending Appellants' lawsuit. The plain reading of the statute is that the PCC and OTA ceased to exist on October 1, 2004, without exception. Appellants, therefore, cannot maintain their lawsuit against these defunct entities. The question then becomes whether, even assuming the claims transferred to the GSA, the GSA can be substituted as a defendant without an express waiver of *GSA's* sovereign immunity. We conclude it cannot.

10

obligated to pay the employment benefits Appellants seek, it does not mean the GSA can be held to answer the claim in a district court; there must also be an express waiver of the GSA's sovereign immunity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965 (1983). The United States' immunity from suit extends to its agencies. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Fed. Land Bank of St. Louis v. Priddy*, 295 U.S. 229, 231, 55 S. Ct. 705, 706 (1935); *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968). As the Supreme Court explained in *Lane v. Pena*:

> A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign. To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims. A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; "the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text."

518 U.S. 187, 192, 116 S. Ct. 2092, 2096-97 (1996) (citations omitted) (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37, 112 S. Ct. 1011, 1016 (1992)).

11

We construe any ambiguities in a purported waiver of sovereign immunity in favor of immunity. *See United States v. Williams*, 514 U.S. 527, 531, 115 S. Ct. 1611, 1616 (1995).

Appellants direct us to no "unequivocal expression" of Congress's intent to waive the GSA's immunity from suit, let alone an expression of Congress's intent to make the GSA liable for monetary damages. Instead, Appellants suggest § 3712(e)(2) supplies the necessary waiver of GSA's immunity. As we understand it, Appellants' argument is twofold. First, they contend that by directing the GSA to pay "any outstanding liabilities" of the PCC, Congress necessarily intended to subject the GSA to suit in federal court. This is hardly the "unequivocal expression" of the GSA's amenability to suit precedent demands. It is not difficult to imagine Congress intended the GSA to handle disputes concerning the PCC's outstanding liabilities through its internal procedures without subjecting the GSA to a court's judgment. To accept Appellants' position would be to imply a waiver of immunity, which we will not do. *Lane*, 518 U.S. at 192, 116 S. Ct. at 2096-97.

Second, Appellants propose a novel approach to the issue of sovereign immunity where the liabilities of a defunct government entity whose immunity had been waived are transferred to an entity whose immunity is retained. They contend the waiver of immunity is also transferred to the successor entity. We

12

need not determine whether Congress waived the PCC's immunity as to the Appellants' claims, because even if it did, we reject the notion that the transfer of the PCC's liabilities to the GSA automatically carried with it the PCC's waiver of immunity, absent unequivocal statutory language to that effect.[7]

Absent an unequivocal statutory expression of Congress's intent to waive the GSA's sovereign immunity, the GSA cannot be required to defend Appellants' suit in district court. The court, therefore, did not err in denying Appellants' Rule 25(c) motion to substitute the GSA as a defendant. Without a defendant remaining in this litigation, the district court did not err in dismissing Appellants' suit. *See Organic Cow, LLC v. Ctr. for New Eng. Dairy Compact Research*, 335 F.3d 66, 72 (2d Cir. 2003) ("Where . . . a government entity terminates with no . . . appropriate governmental body to stand in its shoes for purposes of litigation . . . there can be no substitution of parties under Rule 25.").

---

[7]To the extent Appellants argue they may pursue their suit against the GSA under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), that argument is waived because it appears only in a footnote in their initial brief and is unaccompanied by any argument. *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) (stating a single footnote in the appellant's initial brief was not sufficient to preserve the issue). Similarly, Appellants' argument with respect to the "general savings statute," 1 U.S.C. § 109, was raised for the first time in their reply brief and was not presented before the district court. It is therefore also waived. *See id.* ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief.").

This conclusion is bolstered by the fact that § 3712(e) contains none of the language Congress usually employs to provide for the non-abatement of litigation and the substitution of successor entities. When Congress dissolves or terminates a government agency, commission, or corporation and intends for pending litigation to continue, it expressly provides for the non-abatement of pending suits by or against the dissolved entity and designates a successor to stand in the shoes of the entity for purposes of the litigation. For example, when Congress established the Department of Energy, it terminated several agencies and transferred their functions to the new department. *See* 42 U.S.C. §§ 7151, 7293. In so doing, Congress expressly provided "[n]o suit, action, or other proceeding commenced by or against [the terminated agencies] shall abate" and that, instead, pending litigation "shall be continued with the Secretary or other official, as the case may be, substituted." *Id.* § 7295(c)-(e). Congress has used substantially identical language elsewhere to preserve pending litigation when forming new departments or agencies from existing ones. *See, e.g.*, 20 U.S.C. § 3505(c)-(e) (establishing the Department of Education from the former Department of Health, Education, and Welfare and providing for the non-abatement of pending suits); 22 U.S.C. § 6543(c), (d) (providing for the non-abatement of suits by or against the Broadcasting Board of Governors and for substitution of the Board for suits by or

14

against the former United States Information Agency); *id.*§ 6615(c)-(e) (providing

for the non-abatement of suits by or against former federal agencies and for

substitution of parties).  These statutes convince us that when Congress intends for

pending litigation to continue unabated against a successor entity, it does so

expressly.[8]

The First Circuit's decision in *Maysonet-Robles v. Cabrero*, 323 F.3d 43

(1st Cir. 2003), also reinforces our conclusion.  The plaintiffs in *Maysonet-Robles*

were a putative class of homeowners and tenants of a low income housing

complex in Puerto Rico.  *Id.* at 46.  They sued the Urban Renewal Housing

Corporation Accounts Liquidation Office of Puerto Rico, an agency of the Puerto

Rico government amenable to suit, for failing to disclose the presence of asbestos

and lead in their homes.  *Id.*  While the action was pending, the Puerto Rico

Legislature dissolved the agency and transferred its assets to the Department of

---

[8]Appellants direct our attention to the Valles Caldera Preservation Act of 2000, 16 U.S.C. §§ 698v to 698v-10, which established the Valles Caldera Trust, a wholly-owned government corporation with authority to sue and be sued and charged with managing the Valles Caldera National Preserve, *see id.* §§ 698v-3, 698v-4.  Section 698v-8 provides the Trust shall terminate at the end of the twentieth year after acquisition of the land in the Preserve, at which time the Secretary of Agriculture shall assume all management and administrative functions of the Preserve. *See id.* § 698v-8(a), (c).  Section 698v-8(d) directs that upon the Trust's termination, the assets in the Trust "shall be used to satisfy any outstanding liabilities."  Appellants suggest the "broad language" in § 698v-8(d), which is virtually identical to 22 U.S.C. § 3712(e)(2), "would also permit survival of a suit against the Trust pending at the time of its termination." Appellants' reliance on the Valles Caldera Preservation Act merely begs the question presented here.

15

Housing for the Commonwealth of Puerto Rico, an arm of the state immune from suit under the Eleventh Amendment.[9] *Id.* at 46-47. The district court permitted the Department to be substituted as a defendant, but dismissed the action on Eleventh Amendment grounds. *Id.* As the First Circuit stated: "[T]he issue on appeal is whether [the] Department, interjected into the ongoing litigation by way of a Puerto Rican statute, may successfully assert such immunity when it could not have been invoked by its predecessor in interest . . . ." *Id.* at 48. The First Circuit affirmed the dismissal, finding no unequivocal waiver of the Department's immunity and concluding the Department could assert its immunity despite being a successor to a government entity that had been subject to suit. *Id.* at 50-52.

We find the reasoning in *Maysonet-Robles* applicable here. Absent an unequivocal waiver of the GSA's immunity from suit, permitting substitution of the GSA for the PCC and OTA would be futile since the district court could not enter judgment against the GSA. This is so, regardless of whether the GSA is obligated to pay the employment benefits Appellants claim are owed to them.[10]

---

[9]The First Circuit "has consistently held that Puerto Rico enjoys immunity from suit equivalent to that afforded to the States under the Eleventh Amendment." *Maysonet-Robles*, 323 F.3d at 48 n.3 (citing *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 21 n.3 (1st Cir. 2001)).

[10]We do not decide whether § 3712(e) transferred the PCC's liability for Appellants' claims to the GSA. We simply hold the district court did not err in denying Appellants' motion to substitute the GSA on sovereign immunity grounds and so did not err in dismissing this suit

## IV. CONCLUSION

The district court did not err in ruling the suit against the PCC and OTA abated when Congress terminated these entities during the litigation. The court also did not err in refusing to substitute the GSA as a defendant because Congress has not waived the GSA's sovereign immunity with respect to Appellants' claims.

**AFFIRMED.**

---

for want of a defendant.

BARKETT, Circuit Judge, dissenting:

Because I disagree with the majority's reasoning regarding both the abatement of ASEDAC's claims and the waiver of sovereign immunity, I dissent.

First, I do not think that a common sense reading of the statute in question, 22 U.S.C. § 3712(e), supports the majority's conclusion that "appellant's suit [against the PCC and OTA] abated," because the "statute's plain meaning is that Congress terminated the PCC and OTA without exception . . . . " Majority Op. at 8-9. While the language of the statute does explicitly terminate both the PCC and the OTA, it also states that "the Panama Canal Revolving Fund shall be transferred to the General Services Administration (GSA)," which "shall use the amounts in the Fund to make payments of <u>any outstanding liabilities</u> of the Commission . . . ." 22 U.S.C. § 3712(e)(2) (emphasis added). I fail to see how the plain meaning of the language "any outstanding liabilities"[1] can be read to exclude existing lawsuits

---

[1] If the statute mentioned "judgments' rather than "liabilities," the majority's plain meaning argument would be strengthened. But Congress explicitly chose to use the term "liabilities." To understand the meaning of a term not defined in the statute itself, we must resort to common usage. See CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning." (internal quotation marks and citations omitted)). And the common usage of the term "liabilities" encompasses potential obligations from existing lawsuits. Indeed, definitions of the term include not only legal obligations, but also accountability, which can be determined by a pending lawsuit. Black's Law Dictionary 925 (7th ed. 1999) (defining "liability" as "the quality or state of being legally obligated or accountable"). Other definitions specifically include contingent obligations. See, e.g., Black's Law Dictionary 823 (5th ed. 1979) (defining liability as "of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely").

18

against the PCC, and indeed neither the appellants nor the majority opinion provide any grounds for this argument. The doctrine of abatement comes from the law of corporations, with respect to which the Supreme Court has held that while "a dissolution of a corporation works an abatement of pending actions," Def. Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 634 (1949), some claims may survive dissolution and "[a]ll that is necessary [for the survival of claims] is a statute so providing," id. at 635. Here the statute in question clearly provides for the transfer of "any outstanding liabilities" to the GSA, thereby allowing, by its plain meaning, the survival of pending lawsuits against the PCC or the OTA.

Second, because I believe that the plain meaning of the statute transferred appellants' claims against the PCC to the GSA, I also disagree with the majority's arguments regarding sovereign immunity. Indeed, since Congress clearly transferred "any outstanding liabilities" of the PCC to the GSA, it makes sense that if Congress had already waived sovereign immunity for the PCC for these types of claims there did not need to be a further waiver of sovereign immunity. Congress had already explicitly waived the sovereign immunity of the PCC in the Panama Canal Act of 1979, Pub. L. No. 96-70, 93 Stat 452, 22 U.S.C. § 3601 et seq., which contains a broad "sue-and-be-sued clause." 22 U.S.C. § 3612a(c)

19

("The Commission may sue and be sued in its corporate name . . . ."); see also

FDIC v Meyer, 510 U.S. 471, 480 (1994) (holding that such sue-and-be-sued

clauses are to be "liberally construed notwithstanding the general rule that waivers

of sovereign immunity are to be read narrowly in favor of the sovereign").[2]

Accordingly, the mere transfer of "any outstanding liabilities" from the PCC to the

GSA did not require a further waiver of sovereign immunity.

---

[2] The district court erroneously concluded that Congress did not waive the sovereign immunity of the PCC except for claims "relative to navigation of the Panama Canal and adjacent waters" based on its misreading of the statutory provisions at issue. The district court focused on language in 22 U.S.C. §3612a(c)(1) which explicitly created an exception to the general waiver of sovereign immunity, by stating that "the amenability of the Commission to suit is limited by . . .[22 U.S.C. § 3761] . . . ." 22 U.S.C. § 3761(d), which the district court focused on and cited in its analysis, however, merely states that "[e]xcept as provided in [22 U.S.C. § 3776] . . . no action for damages on claims cognizable under this part shall lie against the United States or the Commission . . . ." 22 U.S.C. § 3761(d) (emphasis added). And 22 U.S.C. § 3776 specifies that claims for damages under 22 U.S.C. § 3771(a) or 3772 (which pertain to claims for injuries in the navigation of the canal) may be brought against the Commission solely in the Eastern District of Louisiana. 22 U.S.C. § 3776. The district court concluded from this language that "the Commission may be sued for damages but only for claims relative to navigation of the Panama Canal and adjacent waters as set forth in sections 3761 and 3776 of the Act."

The district court erred in expanding the clear language of the § 3761 exception, which explicitly applies only to "claims cognizable under this part," to all claims against the Commission. Section 3761 is located in Part 4 of the Panama Canal Act, which relates to "claims for injuries to persons or property." See Panama Canal Act of 1979, ch. 4. If ASEDAC's claims were brought for injuries to person or property they would clearly have been subject to the restrictions in § 3761. The claims at issue here, however, are employment-benefit claims which do not arise from injuries to person or property, and do not fit into the exceptions of § 3761. ASEDAC's claims were thus properly filed against the PCC and the OTA under the Panama Canal Act of 1979.