**Carol SURPRENANT, Individually and on Behalf of All Others Similarly Situated**

v.

**MASSACHUSETTS TURNPIKE AUTHORITY, Massachusetts Port Authority, and Massachusetts Department of Transportation.**

**Civil Action No. 09–CV–10428–RGS.**

United States District Court, D. Massachusetts.

Feb. 4, 2011.

Decision Denying Motion to Alter or Amend Judgment May 9, 2011.

---

Richard A. Acocelli, Joseph D. Cohen, Joseph Weiss, Weiss & Lurie, New York, NY, Timothy J. Burke, Stull, Stull & Brody, Los Angeles, CA, David Pastor, Gilman and Pastor, LLP, Boston, MA, for Plaintiff.

Thomas A. Barnico, Kenneth W. Salinger, Attorney General's Office, Joseph M. Kaigler, William A. Zucker, McCarter & English, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

STEARNS, District Judge.

In this putative class action, Carol Surprenant, a Rhode Island resident, alleges that certain concessionary bridge and tunnel tolls granted by the Massachusetts Turnpike Authority (MTA) and the Massachusetts Port Authority (MassPort) to local residents discriminate against out-of-state travelers in violation of the Dormant Commerce Clause.[1] The Massachusetts Department of Transportation (MassDOT), the successor to the MTA and MassPort, moves for dismissal pursuant to Fed. R.Civ.P. 12(c), arguing that as a recently constituted arm of the Commonwealth, it is immune from suit under the Eleventh Amendment.

Surprenant filed her six-count Com-

---

1. The Dormant Commerce Clause is not explicitly stated in the U.S. Constitution, but is inferred as a negative implication of art. 1, § 8, which grants Congress the power to regulate commerce "among the several States." As construed by the Supreme Court, the Dormant Commerce Clause prohibits States from enacting legislation that would burden or discriminate against interstate commerce. The doctrine is riddled with qualifications and exceptions. *See, e.g., White v. Massachusetts Council of Constr. Emp'rs, Inc.,* 460 U.S. 204, 208, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983); *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). At least two Justices (Scalia, J., and Thomas, J.) are of the view that there is no textual or historical basis for a Dormant Commerce Clause and that positing its existence conflicts with the Tenth Amendment's reservation of all non-delegated powers to the States. *See, e.g., Tyler Pipe Indus., Inc. v. Dep't of Rev.,* 483 U.S. 232, 257–258, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987) (Scalia, J., dissenting).

plaint on March 20, 2009.[2] On March 4, 2010, the court issued a Memorandum and Order dismissing her claim under the Privileges and Immunities Clause, art. 4, § 2 (Count II).[3] The court denied the motion to dismiss the Dormant Commerce Clause claim (Count I) and permitted limited discovery on two issues: whether "the tolls charged Surprenant are based on some fair approximation of the cost of her use of the facilities"; and whether any burden imposed on Surprenant (and similarly situated travelers) was "clearly excessive in relation to the *local* benefits conferred by the preferred resident discounts." *Surprenant v. Massachusetts Tpk. Auth.*, 2010 WL 785306, at *7 (D.Mass. Mar. 4, 2010) (emphasis in original).

An important development occurred in the meantime. On November 1, 2009, the Massachusetts Legislature created a new state agency, the MassDOT. The Legislature dissolved the MTA and shifted all of its "functions, assets, and liabilities" to the MassDOT. Title to the Ted Williams, the Sumner and Callahan Tunnels, and the Tobin Memorial Bridge was transferred from the MTA and MassPort to the MassDOT. The Legislature also placed the responsibility for administering the resident discount toll programs with the MassDOT. *See* Mass. Gen. Laws ch. 6C, § 13. On April 5, 2010, Surprenant filed an Amended Complaint substituting the MassDOT as the named defendant. The MassDOT answered, raising the Eleventh Amendment as an affirmative defense. On September 27, 2010, the MassDOT filed this motion for judgment on the pleadings.

Surprenant makes two arguments in the attempt to fend off a dismissal. First, she contends that in abolishing the MTA, the Legislature expressly forbade the Mass-DOT, as the MTA's successor, from raising Eleventh Amendment immunity in pending actions. Second, she argues that in transferring MassPort's contracts to the Mass-DOT, the Legislature provided that "[n]o existing right or remedy of any character shall be lost, impaired, or affected by this act," Mass. St. 2009, ch. 25, § 133(b)(iii), which she interprets as barring the Mass-DOT from asserting any right that might be disabling to a plaintiff.

Because the court agrees that it is divested of jurisdiction by the Eleventh Amendment, the motion for judgment on the pleadings will be allowed.

## BACKGROUND

The underlying facts are set out in the court's March 4, 2010 Memorandum and Order and are repeated here only in their essentials. Surprenant, a resident of Washington County, Rhode Island, is a retired college professor. She drives frequently to Maine for tourism and to other parts of New England to conduct a part-time consulting business. She pays the regular toll amount when she crosses the Tobin Bridge traveling to the North country, and when she uses the Ted Williams Tunnel to catch a flight at Logan Airport.

The MTA introduced the Tunnel Communities Resident Discount Program in 1995 pursuant to a legislative mandate.

---

**2.** Surprenant has waived her Equal Protection Claim. Opp'n at 2 n. 3. The remaining counts (42 U.S.C. § 1983; unjust enrichment; and restitution) are derivative of her constitutional claims or prayers for substitute equitable relief.

**3.** This Clause, which traces its lineage to the original (unamended) U.S. Constitution, guarantees citizens of each State the right to unrestricted interstate travel. *See Paul v. Virginia*, 75 U.S. 168, 170–171, 8 Wall. 168, 19 L.Ed. 357 (1868), *overruled on other grounds, United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).

Under the Program, residents of East Boston, South Boston, Boston's North End, Chelsea, and Charlestown, receive discounted tolls. *See* 730 C.M.R. 7.03(9); Mass. Gen. Laws ch. 6(C), § 13(b). The tunnel toll paid by residents of these communities is fixed permanently at the amount charged in August of 1995, that is $0.40. Non-resident, non-commercial vehicles that are not enrolled in the FastLane program presently pay $3.50 to use the Tunnels; FastLane participants pay $3.00.[4] *See* 740 C.M.R. 11.03. Chelsea and Charlestown residents who enroll in the Tobin Bridge Resident Discount Program pay $0.30; while all other users pay $3.00 (except FastLane participants who pay $2.50).

## DISCUSSION

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss."[5] *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir.2008). Because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Fin. Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir.2006). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that "it implicates the pleadings as a whole." *Aponte–Torres v. Univ. of Puerto Rico,* 445 F.3d 50, 54–55 (1st Cir.2006). Filed

after the close of the pleadings, a Rule 12(c) motion is "based solely on the factual allegations in the complaint and answer...." *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 8 (1st Cir.2002).

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "The Supreme Court ... has expanded the doctrine of sovereign immunity beyond the literal words of the Eleventh Amendment, holding that state governments, absent their consent, are not only immune from suit by citizens of another state, but by their own citizens as well." *Guillemard–Ginorio v. Contreras–Gomez,* 585 F.3d 508, 529 n. 23 (1st Cir.2009), citing *Alden v. Maine,* 527 U.S. 706, 728–729, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Because a State, its agencies, and agency officials are not "persons" for purposes of § 1983, these entities are not subject to suit for money damages in the federal courts without the State's consent or a clear abrogation of State sovereignty by Congress. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribu-

---

**4.** The Fast Lane Program is an electronic toll collection system. It requires that a vehicle be equipped with a state-issued transponder. FastLane is available to both in-state and out-of-state drivers.

**5.** To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a Rule

12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (internal citations omitted). *See also Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007).

nals." *Pastrana–Torres v. Corporacion de Puerto Rico para la Difusion Publica,* 460 F.3d 124, 126 (1st Cir.2006), quoting *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

 The Commonwealth has not consented to being sued for money damages under § 1983 in either the federal courts or in its own courts. *Woodbridge v. Worcester State Hosp.,* 384 Mass. 38, 44–45, 423 N.E.2d 782 (1981). *See also Inyo Cnty. v. Paiute–Shoshone Indians of the Bishop Cmty.,* 538 U.S. 701, 709, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003) (a sovereign Indian tribe, like a State, is not subject to suit under section 1983). A state entity is similarly immune from suit if it functions as an "arm of the state." *Coggeshall v. Mass. Bd. of Registration of Psychologists,* 604 F.3d 658, 662 (1st Cir.2010); *In re Dupont Plaza Hotel Fire Litig.,* 888 F.2d 940, 942 (1st Cir.1989). Whether an agency is in fact an "arm of the state" is determined by applying federal law. *Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). The federal test considers, among other factors, the agency's ability to satisfy judgments from its own funds, whether its functions are governmental or proprietary, whether the agency is separately incorporated, the extent to which the State exerts control over the agency, whether the agency has the power to sue in its own right, whether its property is taxed by the State, and whether the State has immunized itself from the agen-

cy's acts or omissions. *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.,* 991 F.2d 935, 939–940 (1st Cir. 1993).

 That the MassDOT is an arm of the Commonwealth for purposes of the Eleventh Amendment is not disputed by Surprenant.[6] She objects instead to a post hoc absolution of the MTA, as the predecessor of the MassDOT, from liability for its past actions on grounds of sovereign immunity. (The court will assume for discussion purposes that the MTA was not at any time an arm of the Commonwealth).[7] An assertion of Eleventh Amendment immunity is examined in two steps. *See Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico and the Caribbean Cardiovascular Ctr. Corp.,* 322 F.3d 56, 65 (1st Cir.2003). The first and often dispositive consideration is "whether the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity." *Redondo Constr. Corp. v. Puerto Rico Highway and Transp. Auth.,* 357 F.3d 124, 126 (1st Cir. 2004). The intention may be expressed in an entity's governing statute or implied through its structure, powers, limitations, and relationship to the state. *Id.* at 126–128. The second stage of the analysis asks "whether the state's treasury would be at risk in the event of an adverse judgment." *Id.* at 126. "[A] suit, although nominally aimed at an official, will be considered one against the sovereign 'if the judgment sought would expend itself on the public

---

6. Any lingering doubt on this point was settled by Mass. Stat. 2010, ch. 454, §§ 3–4, signed into law by Governor Patrick on January 14, 2011, which strikes the word "authority" each time it appears in the General Laws referring the MassDOT and substitutes the word "department" instead.

7. Although MassPort remains in existence, all of its functions relevant to this lawsuit have been transferred to the MassDOT. Thus, if the MassDOT can lawfully claim immunity under the Eleventh Amendment, it is not bound by the prior (or present) legal status of either the MTA or MassPort. *See Maysonet–Robles v. Cabrero,* 323 F.3d 43, 48 (1st Cir. 2003).

treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" *Muirhead v. Mecham,* 427 F.3d 14, 18 (1st Cir.2005), quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). *See also Fresenius,* 322 F.3d at 68 (when the factors point in conflicting directions, "then the dispositive question concerns the risk that the damages will be paid from the public treasury.").

Surprenant, as noted, does not dispute that the MassDOT is an "arm of the state." However, Surprenant contends that in creating the MassDOT, the Legislature waived Eleventh Amendment immunity with regard to all ongoing litigation against the MTA. The legislative language Surprenant has in mind states that "actions and proceedings against or on behalf of the Massachusetts Turnpike Authority shall continue unabated and, from and after the date of dissolution of the authority, may be completed against or by the department."[8] Mass. Stat. 2009, ch. 25, § 133(d). In the alternative, Surprenant argues that a simple amendment to her Complaint

> to add the current head of the MassDOT as a defendant will cure the ills Defendants complain of. It is black letter law that the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew v. Hawkins,* 540 U.S. 431, 437 [124 S.Ct. 899, 157 L.Ed.2d 855] (U.S.2004) (citing *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908)); *Nieves–Marquez v. Puerto*

*Rico,* 353 F.3d 108, 123 (1st Cir.2003) ("Under *Ex parte Young,* state officers do not have Eleventh Amendment immunity from claims for prospective injunctive relief").

Pl.'s Opp. at 1.

■■ While it is true that the language cited by Surprenant does not operate to automatically extinguish pending litigation, there is nothing in the statute or its wording that would prevent or bind the Mass-DOT from asserting any of its available defenses, even those that have the effect of terminating a lawsuit on jurisdictional grounds (as the choice of the word "may" in the phrase "may be completed against or by the department" indicates). *See Maysonet–Robles,* 323 F.3d at 50–51 (finding a similar grant of continuing authority over pending litigation to stop well short of an unequivocal consent to a waiver of sovereign immunity). Any hesitation must be strictly resolved in favor of the Commonwealth as a waiver of sovereign immunity will not be implied. *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). It may seem unfair that an immunity defense that was not available to the MTA can be bestowed on the Mass-DOT as its successor by legislative fiat. But, as the First Circuit has made clear, the Eleventh Amendment enjoys a unique jurisdictional status. "Unlike a private individual or corporation, a State retains its sovereign immunity as a 'personal privilege' and, whether it is the original defendant or is added as a party later, it cannot be sued involuntarily." *Maysonet–Robles,* 323 F.3d at 50, quoting *Clark v. Barnard,* 108 U.S. 436, 447–448, 2 S.Ct. 878, 27 L.Ed. 780 (1883).[9]

---

**8.** Completely unpersuasive is the legislative language Surprenant cites from Mass. Stat. 2009, ch. 120, § 42 (transferring the Tobin Bridge from MassPort to the MassDOT), which states that "[n]o existing right or remedy of any character shall be lost, impaired, or

affected by this act." Eleventh Amendment immunity is patently an "existing right" accruing to the individual States.

**9.** The facts in *Maysonet–Robles* are for all practical purposes identical to those here. In

Surprenant's assertion, that by adding the Secretary of the MassDOT as a named defendant she can sidestep the Eleventh Amendment, is also unavailing. A litigant may not resort to the expedient of naming a state official in an action for prospective declaratory or injunctive relief as a means of circumventing the Eleventh Amendment. "The *Ex parte Young* doctrine does not apply in cases where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity." *Mills v. State of Maine*, 118 F.3d 37, 54 (1st Cir. 1997), citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), and *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).[10] Because the MassDOT is immune to suit in this court under the Eleventh Amendment, the

motion for judgment on the pleadings will be allowed.[11]

### ORDER

For the foregoing reasons, defendants motion for judgment on the pleadings is *ALLOWED*. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

### MEMORANDUM AND ORDER ON MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT"

On February 4, 2011, the court allowed the Massachusetts Department of Transportation's (MassDOT) motion for judgment on the pleadings.[1] The court held that as a recently constituted arm of the Commonwealth, MassDOT is immune from suit under the Eleventh Amendment. Judgment entered for MassDOT on Feb-

---

*Maysonet–Robles*, the Legislature of the Commonwealth of Puerto Rico dissolved a public housing corporation that was subject to being sued and transferred its functions to the Housing Department of the Executive Branch. In rejecting plaintiffs fairness argument, the Court observed that the "Department is an arm of the State, regardless of its late arrival at the courthouse as a successor in interest, and it must be accorded the same respect due a State under the Eleventh Amendment...." *Id.* at 50.

10. As the Commonwealth points out, Surprenant has not asked the court for prospective injunctive relief other than the placing of all non-resident tolls in a constructive trust pending resolution of this lawsuit as insurance for a payout of damages should Surprenant prevail. (All other requested equitable relief is in the nature of substitute damages). As the Court observed in Mills, an award of prospective declaratory relief that has "much the same effect as a full-fledged award of damages or restitution by the federal court" is the kind of relief prohibited by the Eleventh Amendment. *Id.*, 118 F.3d at 54–55, quoting

*Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

11. Because sovereign immunity operates as a complete bar to further litigation, any comment on the *Pike* test issues that were the subject of discovery before the immunity defense was raised would be superfluous dicta. Suffice it to say, there is nothing cited in Surprenant's brief that would undermine Judge van Gestel's decision in *Kelen v. Massachusetts Tpk. Auth.*, 2007 WL 1418510 (Mass.Super. May 3, 2007), that the resident toll structure program passes constitutional muster.

1. In her original Complaint, plaintiff Carol Surprenant, a Rhode Island resident, alleged that certain concessionary bridge and tunnel tolls granted by the Massachusetts Turnpike Authority (MTA) and the Massachusetts Port Authority (MassPort) to local residents discriminate against out-of-state travelers in violation of the Dormant Commerce Clause. MassDOT, the successor to the MTA and MassPort, moved for dismissal pursuant to Fed.R.Civ.P. 12(c).

ruary 7, 2011. On March 7, 2011, Surprenant filed a motion to alter or amend the judgment under Rule 59(e), and for leave to file a Second Amended Complaint.

Surprenant argues that leave to amend her Complaint should be granted because: (1) in her Opposition to MassDOT's motion for judgment on the pleadings, she made clear her intention to seek leave to name the Secretary of MassDOT as a defendant in the event her argument against the motion failed; (2) the prayer in the First Amended Complaint for a declaration that the Resident Discount Program violates the Dormant Commerce Clause constituted a curative claim for "prospective declaratory relief"; [2] (3) the court's factual and legal conclusions in its February 4, 2011 Memorandum and Order were erroneous; and finally, (4) because granting leave to amend would cause "absolutely no prejudice … to defendants." MassDOT counters that: (1) Surprenant delayed seeking leave to amend more for than thirteen months after it made clear that it intended to invoke sovereign immunity; (2) Surprenant has failed to make the extraordinary showing of entitlement to relief that a Rule 59(e) motion requires; [3] and (3) the proposed amendment in any event is futile "as it contains no factual allegations plausibly suggesting that the resident discount toll programs challenged by Surprenant violate the Dormant Commerce Clause." MassDOT Opp'n at 1. I agree on all three

points, but will focus on the third and first argument.

■ As the court stated in footnote 12 of its February 7, 2011 Memorandum and Order,

> [b]ecause sovereign immunity operates as a complete bar to further litigation, any comment on the *Pike* test issues that were the subject of discovery before the immunity defense was raised would be superfluous dicta. Suffice it to say, there is nothing cited in Surprenant's brief that would undermine Judge van Gestel's decision in *Kelen v. Massachusetts Tpk. Auth.*, 2007 WL 1418510 (Mass.Super. May 3, 2007), that the resident toll structure program passes constitutional muster.

The parties' post-discovery submissions on the *Pike* issues amply confirm Judge van Gestel's common-sense determination that the burdens faced by local residents who live adjacent to the Sumner and Ted Williams Tunnels and the Tobin Memorial Bridge are substantial and that the benefit conferred by the Resident Discount Program, while it is real, is not excessive when weighed against the incidental burden (if it is a burden at all) placed on transient users of the facilities like Surprenant.

A few examples will suffice. MassDOT has offered Rule 30(b)(6) testimony, reports, transcripts, and eyewitness accounts documenting the burdens imposed on the

---

**2.** As the court previously noted, "an award of prospective declaratory relief that has much the same effect as a full-fledged award of damages or restitution by the federal court, is the kind of relief prohibited by the Eleventh Amendment." Mem. and Order of Feb. 4, 2011 (Dkt. # 94), at 10 n. 10, quoting *Mills v. State of Maine*, 118 F.3d 37, 54–55 (1st Cir. 1997). *See also Regents of the Univ. Of California v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). *Compare Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

**3.** In the First Circuit, "Rule 59(e) motions are granted only where the movant shows a manifest error of law or newly discovered evidence." *Prescott v. Higgins*, 538 F.3d 32, 45 (1st Cir.2008). "A Rule 59(e) motion should not … raise arguments which could, and should, have been made before judgment issued." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir.2008), quoting *Harley–Davidson Motor Co. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir.1990).

communities that host the Bridge and the Tunnels. Some of these burdens are historical, including the splitting of communities and the takings of housing and other property.[4] Others are on-going, such as increased traffic, noise, air pollution, accidents, jack hammering, vibration, the diversion of traffic onto local streets, soil contamination, flooding, and disruptions of utility services and business operations. *See* O'Meara Decl. ¶¶ 7–9; Cote Decl.—Exs. 5 and 6; and Ernst Decl. ¶¶ 5–11.[5]

Stephen Collins, the Director of Statewide Tolling for MassDOT and a Rule 30(b)(6) deponent, testified about the impact the construction of the Ted Williams Tunnel and the Big Dig [6] have had (and will continue to have) on the host communities.[7] According to Collins,

> [t]hese communities were host to the project itself, to the construction. The construction was being done by the Massachusetts Turnpike Authority, and [the Resident Discount Program] is a goodwill gesture towards the community for living with those impacts, both the im-

pacts of facility and for the construction, 24 hours a day, 7 days a week. Not only is it a goodwill gesture, but it provides the community with a financial—it relieves a financial hardship from them because these communities are subject to those tolls to do more than just to commute to and from work every day. They are subject to those tolls to get their kids to soccer games, to get to City Hall for a birth certificate, to get back again, to take trips from their homes that you and I take for granted.

Collins Dep. at 53:21–54:11. Collins also testified to a permanent loss of parking and the seemingly never-ending need to correct recurring problems with the Central Artery Project.

Helmut Ernst, MassDOT's District Highway Director for the District 6 region (also a Rule 30(b)(6) deponent) testified to the impact of regular maintenance work on local communities.[8] Moreover, much of the work must be done at night to avoid traffic congestion, thus disrupting the sleep of those who live nearby. Ernst

---

**4.** Although Surprenant disagrees with defendant that the statute of limitations precludes class claims for damages accrued prior to March 30, 2006, she contends that the court should ignore any evidence offered by MassDOT that falls outside the statute of limitations. However, the court notes that the Discount Program was implemented to redress historical burdens as well as those that MassDOT indicates as "on-going."

**5.** A MassDOT Traffic and Revenue Study, dated January 28, 2010, found that the Tobin Bridge carries volumes "in excess of 80,000 vehicles on an average day, and in 2009 the Ted Williams Tunnel averaged 33,100 westbound and 31,600 eastbound trips daily; the Sumner Tunnel averaged 21,300 daily trips; and the Callahan Tunnel averaged 23,100 daily trips." Small Decl.—Ex. 2 at 24779. With these vehicles comes pollution and noise.

**6.** The Big Dig involved replacing Boston's deteriorating six-lane elevated Central Artery

(I–93) with an underground highway connected to the new Leonard P. Zakim Bunker Hill Memorial Bridge and extending to Boston's Logan International Airport and Route 1A. The Big Dig spans over 7.3 miles of highway, 161 lane miles in all, about half of which is below ground. Excavation work on the Central Artery Tunnel Project began in earnest in 1995.

**7.** Collins served as chief of toll operations for the MTA from March of 2008 to November 1, 2009; Chief of Staff for the MTA from 2007 to 2008; Associate Project Director for the Central Artery/Tunnel Project from the early 2000s until 2007; and Manager of Community Relations in Mitigation from 1999 until the early 2000s.

**8.** An example of recurring maintenance cited by MassDOT is the regularly scheduled repainting of the Tobin Bridge, which generates paint chips, dust, noise, and traffic snarls in the neighboring communities.

Dep. at 17:16–18:21. Ernst also noted that construction of the Ted Williams Tunnel and the Central Artery required the installation of portals in South Boston and East Boston and the erection of buildings in Charlestown, East Boston and South Boston to house the needed ventilation systems.

> The ventilation fans create additional vibrations and noise as well as dust within these communities. Traffic now cuts through South Boston to reach and to travel from the South Boston portal to the Ted Williams Tunnel. Trucks have been diverted through South Boston particularly with the construction of the Haul Road that runs from 1–93 to the mouth of the Ted Williams Tunnel. A continuing issue in each of these communities is the routing of hazardous cargos through their streets often in close proximity to residential areas. There also continue to be problems with air quality. The O'Neill Tunnel and its connecting highways have instances where air emission standards at the south portal are exceeded.

Ernst Decl. ¶¶ 8–9.

In sum, Surprenant's claim that "the Non-resident Traveler (or commuter) is . . . being economically burdened while the Resident Traveler (or commuter) is not," Pl. Supplemental Br. at 6, is simply not viable in light of the overwhelming evidence to the contrary.[9] Surprenant states that she has used the Tobin Bridge or Ted Williams Tunnel "on several occasions." Am. Compl. ¶ 7. On those occasions she has paid $3.00 to cross the Tobin Bridge and $3.50 to use the Williams Tunnel. *Id.*

¶ 34. MassDOT offers concrete examples of local residents who are required to make use of the Bridge or Tunnels several times a day to take children to school, to commute to work, and to keep appointments.

Finally, Surprenant argues that the court should grant her leave to file a Second Amended Complaint because she had noted in her Opposition to MassDOT's motion for judgment on the pleadings her contingent intention to name the Secretary as a defendant if necessary. The same gambit, however, failed in a recent case before the First Circuit Court of Appeals, *Brait Builders Corp. v. Massachusetts,* 2011 WL 1631952 (1st Cir. May 2, 2011). In *Brait,* as here, the Commonwealth raised the Eleventh Amendment bar. Plaintiff Brait responded with a motion to amend its complaint by adding four state officials in their individual and official capacities. Although the district court allowed the motion, Brait neither filed an amended complaint nor made service on the proposed new defendants. Brait, like Surprenant, argued that its giving notice to amend should have been sufficient and that it would have been "a waste of resources" to file an amended complaint while the district court was considering the motion to dismiss. The Court of Appeals gave short shrift to the argument, noting that Brait had had four months to file an amended complaint and failed to do so. *Id.* at *3–4. Surprenant had thirteen months (and unlike the plaintiff in *Brait* never even filed a motion for leave to amend). Under the circumstances, the result is the same as in *Brait.*[10]

---

**9.** The court notes that if Surprenant elects to pass through the Tobin Bridge or one of the Tunnels, she pays the same toll as any Massachusetts resident other than the small group of local Massachusetts residents who qualify for the Resident Discount Program.

**10.** As the court noted in its February 4, 2011 Memorandum, the prospective relief Surprenant had sought in her original Complaint was the establishment of a constructive trust guaranteeing an eventual payout should the class prevail on her constitutional claim.

### ORDER

Under *Pike* and *Kelen,* all that is required is a demonstration that the burdens on the host communities truly exist and are not illusory, and that any incidental burden placed on out-of-state users like Surprenant are not "clearly excessive." *See* Memorandum and Order of August 23, 2010, at 3. The testimony, declarations, and exhibits submitted by MassDOT easily satisfy this requirement. Accordingly, Surprenant's Motion to Alter or Amend Judgment under Rule 59(e) and Grant Plaintiff Leave to File a Second Amended Complaint is *DENIED.*

SO ORDERED.