[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10911
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-60208-BB


JAMES BAER,

Plaintiff-Appellant,

versus

SILVERSEA CRUISES LTD.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 19, 2018)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

James Baer was injured on a cruise ship.  He sued the cruise line, Silversea Cruises Ltd., alleging it was negligent in arranging his medical care.  He appeals the district court's grant of summary judgment to Silversea on a finding that his claim is barred by a contractual limitations period.  After careful review, we affirm.

I.

**A. Factual Background**

In 2014, Baer instructed his travel agent, Mary Nichols, to book a cruise for him and his wife on Silversea's M/V Silver Spirit.  The cruise was scheduled to sail from Fort Lauderdale on January 6, 2015, and arrive in Los Angeles on January 22.  At the time, Baer and his wife were 89-years old and typically went on two cruise vacations each year.

Silversea sent Nichols an email with a link to the guest information form, which included a copy of the passenger ticket contract, and asked her to acknowledge receipt of those documents.  Nichols sent back the "Passage Contract Acceptance" on Baer's behalf.  Silversea then sent Nichols a copy of the ticket and ticket contract, and she forwarded them to Baer.

The front page of the contract reads:

> **ISSUED    SUBJECT    TO    IMPORTANT    TERMS    AND CONDITIONS**
> **PLEASE READ CAREFULLY BEFORE ACCEPTING**

2

**IMPORTANT NOTICE TO PASSENGERS**

. . .

**THERE ARE IMPORTANT LIMITATIONS ON YOUR RIGHTS AS A PASSENGER TO ASSERT CLAIMS AGAINST THE CARRIER, THE VESSEL AND RELATED ENTITIES.**

**YOU ARE DIRECTED TO CAREFULLY READ AND UNDERSTAND SECTIONS 11, 12, 13, 14 AND 17 OF THIS PASSAGE CONTRACT, AS THEY CONTAIN SIGNIFICANT LIMITATIONS ON YOUR RIGHTS TO ASSERT CLAIMS AGAINST THE CARRIER, THE VESSEL, THE CRUISE LINE, RELATED ENTITIES AND THEIR OFFICERS, AGENTS AND EMPLOYEES.**

**CARRIER'S LIABILITY TO YOU AND/OR YOUR RIGHT TO RECOVER FROM CARRIER IS LIMITED BY THESE TERMS AND CONDITIONS AND YOU ARE DIRECTED TO READ AND FULLY UNDERSTAND THE LIMITATIONS OF LIABILITY CONTAINED IN THIS PASSAGE CONTRACT AND ESPECIALLY THOSE LIMITATIONS CONTAINED IN SECTIONS 11, 12, 13 AND 14 OF THIS PASSAGE CONTRACT.  SECTIONS 11, 12, 13 AND 14 LIMIT YOUR RIGHT TO SUE AND RECOVER FROM CARRIER. SECTION 17 GOVERNS THE PROVISION OF MEDICAL AND OTHER PERSONAL SERVICES ONBOARD THE VESSEL.**

Section 13 is titled "TIME LIMIT FOR REPORTING INJURY OR LOSSES AND CLAIMS."  It states:

**ANY INCIDENT OR ACCIDENT RESULTING IN INJURY, ILLNESS, OR DEATH TO THE PASSENGER MUST BE REPORTED IMMEDIATELY TO THE VESSEL'S OFFICERS. CARRIER WILL NOT BE LIABLE FOR ANY LOSS UNLESS A DETAILED WRITTEN CLAIM IS PRESENTED TO CARRIER WITHIN SIX (6) MONTHS AFTER THE DATE OF THE INCIDENT OR ACCIDENT. LAWSUITS MUST BE FILED BY PASSENGER WITHIN ONE (1) YEAR OF THE**

**DATE OF THE INCIDENT OR ACCIDENT CLAIMED OR ALLEGED TO HAVE CAUSED THE INJURY, ILLNESS, OR DEATH.**

. . .

**IF A WRITTEN CLAIM IS NOT MADE AND SUIT IS NOT FILED WITHIN THE TIME PROVIDED IN THIS SECTION 13, THEN THE PASSENGER WAIVES AND RELEASES ANY RIGHT HE OR SHE MAY HAVE TO MAKE ANY CLAIM AGAINST CARRIER ARISING UNDER, IN CONNECTION WITH, OR INCIDENT TO THIS TICKET OR THE VOYAGE.**

Baer and his wife boarded the ship in Fort Lauderdale. Baer turned in the front page of the contract when he boarded the cruise. On January 17, 2015, while on board the ship, Baer fell near a bar area. X-rays taken aboard the ship revealed Baer had a broken femur. After initial treatment, Baer remained in his cabin.

Silversea personnel told Baer he would need to disembark for further treatment at Cabo San Lucas, Mexico, which was the next port of call. Baer objected, and asked to stay onboard until the cruise reached Los Angeles so he could get treatment in the United States. Silversea told Baer he could not remain on the ship with a broken leg.

On January 19, Silversea personnel transferred Baer on a stretcher to a water taxi. The water taxi took Baer to Amerimed Hospital in Cabo San Lucas. On January 20, Baer underwent surgery.

On January 22, an air ambulance took Baer to Tampa, Florida, his home. There an orthopedic surgeon determined the Mexican surgeon had improperly

4

installed a surgical screw and that the surgical site was infected.  Baer had a second surgery to fix the installation of the screw.  While recovering from the second surgery, Baer had a reaction to the antibiotics that resulted in temporary kidney failure.  When his leg did not fully heal, Baer underwent hip replacement surgery as well.  As a result of the surgeries, Baer suffered a loss of mobility and must now use a cane.

### B. Procedural History

On January 26, 2017, Baer sued Silversea, alleging Silversea negligently sent him to a medical facility that could not provide competent care.

Silversea moved for summary judgment, arguing, among other things, that Baer's claim was barred by the limitations provision in the ticket contract.  Baer responded that his claim was timely because the limitations period was not reasonably communicated to him and didn't cover the claim in any event.

The district court granted summary judgment to Silversea.  It found the one-year limitations period in the ticket contract was enforceable because it was reasonably communicated to Baer.  It further found that the limitations period covered the claim Baer asserted.

Baer brought this appeal.

5

II.

We review de novo the district court's grant of summary judgment. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Carter v. City of Melbourne, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam) (quotation marks omitted).

III.

**A. The Limitations Period is Enforceable**

The parties agree that this maritime action is governed by federal admiralty law. See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984). Federal law permits cruise lines to impose a one-year limit on the time passengers have to bring a civil action.[1] 46 U.S.C. § 30508(b)(2). Such limits are enforceable "if the cruise ticket provided the passenger with reasonably adequate

---

[1] In a footnote, Baer argues this provision does not apply and that this case is instead governed by Florida's four-year statute of limitations. This Court generally will not consider a claim raised only in a footnote. See Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006). In any event, Baer did not raise this issue below, and he is not permitted to raise it for the first time on appeal. See Troxler v. Owens-Illinois, Inc., 717 F.2d 530, 532–34 (11th Cir. 1983).

notice that the limits existed and formed part of the passenger contract." Nash v. Kloster Cruise A/S, 901 F.2d 1565, 1566 (11th Cir. 1990) (per curiam).

This "reasonable communicativeness" test has two prongs. Krenkel v. Kerzner Int'l Hotels, Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam) (quotation marks omitted). First, courts look to the physical characteristics of the limitations provision, including the size of the text, its conspicuousness, and its typeface. Estate of Myhra v. Royal Caribbean Cruises, Ltd., 695 F.3d 1233, 1245–46 (11th Cir. 2012). The second prong analyzes whether the passenger "had the ability to become meaningfully informed of the clause and to reject its terms." Krenkel, 579 F.3d at 1281.

First, the limitations provision is clear and conspicuous in the travel contract. The second paragraph of the contract, which is in all-caps and bolded, alerts passengers that they should read the contract terms carefully and that the terms "limit[] . . . your rights as a passenger to assert claims against the carrier, the vessel, and related entities." The next paragraph specifically directs the passenger to "carefully read and understand Sections 11, 12, 13, 14 and 17" because "they contain significant limitations on your rights to assert claims." The next paragraph contains two further mentions of the importance of reading those same sections. This language sufficiently communicates that the five particular sections mentioned will limit passengers' rights. See Myhra, 695 F.3d at 1246 (finding

7

reasonable communicativeness where "an all-capital headline on the very first page of a large travel packet . . . directed the [passengers'] attention to the terms and conditions"); <u>Nash</u>, 901 F.2d at 1567–68 (affirming finding of reasonable communicativeness where first page of contract directed passengers to specific paragraphs that contained limitations provision).

Section 13 is bolded and titled "Time Limit for Reporting Injury or Losses and Claims." Section 13(A) requires passengers to immediately report "any incident or accident resulting in injury" to the ship's officers, and disclaims any liability unless "a detailed written claim is presented to [Silversea] within six (6) months after the date of the incident or accident." It further requires that "[l]awsuits must be filed by passenger within one (1) year of the date of the incident or accident claimed or alleged to have caused the injury." Section 13(C) expressly provides that "[i]f a written claim is not made and suit is not filed within the time provided in this Section 13, then the passenger waives and releases any right he or she may have to make a claim." This straightforward language clearly communicates that there is a one-year limitation on claims arising from personal injuries. See <u>Krenkel</u>, 579 F.3d at 1281–82 (holding that a forum-selection provision that was "not hidden or ambiguous," was set apart in a separate paragraph, and contained "plain" language satisfied the reasonable communicativeness test).

Baer argues the language in the limitations provision was not clearly communicated because it left ambiguity as to whether onshore injuries were covered by the provision. However, as explained below, the provision is not ambiguous, and therefore it provided adequate notice of how the contract terms limited Baer's legal rights. See Nash, 901 F.2d at 1567 (analyzing whether the content of the notice "reasonably communicate[s] to passengers the existence within the ticket of important terms and conditions which affect legal rights" (alterations adopted and quotation marks omitted)).

Second, Baer had ample opportunity "to become meaningfully informed" of the limitations provision. Krenkel, 579 F.3d at 1281. The ticket contract was sent to his agent, Nichols, who then sent it to him. Baer also submitted a portion of the contract package when he boarded the cruise, showing he received the materials. Baer argues that only Nichols had access to the full terms of the contract, and that he was unaware of the terms at the time he boarded the cruise. But the second prong of the reasonable communicativeness test concerns not whether Baer actually read the contract, but whether he had the opportunity to. See Myhra, 695 F.3d at 1246 n.42 ("We note that whether the Myhras chose to avail themselves of the notices and to read the terms and conditions is not relevant to the reasonable communicativeness inquiry."). The record reflects that Baer communicated regularly with Nichols, authorized her to book the cruise on his behalf, and

9

received relevant documents from her.  Based on this, Baer had the opportunity to avail himself of the notices contained in the ticket contract.  Further, we typically find constructive notice in other contexts where an agent accepts contract documents on behalf of a principal.  See, e.g., Windward Traders, Ltd. v. Fred S. James & Co., 855 F.2d 814, 820 (11th Cir. 1988) (per curiam) (finding constructive notice of the identities of contracting parties where agent possessed cover letter identifying the parties); see also MacArthur v. Kerzner Int'l Bahamas, Ltd., 607 F. App'x 845, 847–48 (11th Cir. 2015) (per curiam) (unpublished) (finding constructive notice of forum selection clause where travel agent possessed terms and conditions of the contract).  This means Baer had both actual and constructive notice of the contract terms.

In sum, the limitations provision was sufficiently communicated to Baer, and that provision is enforceable.

**B. Baer's Claim is Covered by the Limitations Provision**

Section 13 of the ticket contract establishes a one-year limit for bringing claims against Silversea.  Baer argues his claim falls outside the terms of Section 13.

Under federal maritime law, contract interpretation begins with the plain meaning of the contract terms.  See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 31–32, 125 S. Ct. 385, 397–98 (2004).  Where a contractual term is ambiguous, courts

typically "construe the contract language most strongly against the drafter." Edward Leasing Corp. v. Uhlig & Assocs., Inc., 785 F.2d 877, 889 (11th Cir. 1986) (quotation marks omitted); see also St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc., 561 F.3d 1181, 1191 n.19 (11th Cir. 2009) ("[A]n ambiguous provision in a maritime contract is interpreted against the drafter.").

Per Section 13(C), the time limit applies to "any claim against the carrier arising under, in connection with, or incident to this ticket or voyage."  This broad language indicates that all possible claims related to the cruise must fit within one of the time limits outlined in Section 13.  See, e.g., Myhra, 695 F.3d at 1236–37, 1246–47 (holding that forum selection clause covering "any dispute, claim or other matter arising out of or in connection with your contract or your holiday" was broad enough to cover a passenger's death after he contracted Legionnaire's Disease aboard a cruise (quotation marks omitted)).

Section 13(C) does not itself establish the one-year limitation for personal injury lawsuits.  That is instead found in Sections 13(A).  Section 13(A) pertains to "any incident or accident resulting in injury, illness, or death to the passenger."  It also contains language explaining that lawsuits "must be filed by passenger within one (1) year" of either the incident or accident.

11

Section 13(A) by its terms covers Baer's claim.  Baer's fall on the ship certainly qualifies as an accident resulting in injury, and any negligence in the medical care he received or the medical provider chosen flowed from that incident.

Baer argues instead that the true injury occurred offshore, when Silversea selected a subpar hospital.  According to Baer, this puts his claim outside Section 13(A) because this provision requires passengers to notify "the vessel's officers" of any injury, meaning Section 13(A) must cover only incidents that happen onboard the ship.

We reject Baer's interpretation.  There is nothing in the plain language of Section 13(A) that would exclude claims arising from onshore incidents.  See Norfolk S. Ry., 543 U.S. at 31, 125 S. Ct. at 397 ("Read naturally, the word 'any' has an expansive meaning . . . ." (quotation marks omitted)).  And cruise lines have typically been held liable for claims arising from incidents that take place on shore. See, e.g., Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (per curiam) (holding that cruise lines owe passengers "a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit").  It would follow that Section 13, absent express language, would not be limited to claims arising from only on-board incidents.[2]

---

[2] Because the terms of Section 13 plainly cover Baer's claim, we need not reach Baer's argument that Section 13 is ambiguous and should be construed against Silversea.

12

Baer nonetheless urges us to follow the First Circuit decision in Rams v. Royal Caribbean Cruise Lines, Inc., 17 F.3d 11 (1st Cir. 1994), and conclude the limitations provision is ambiguous and therefore does not apply to injuries arising from events that occurred off-ship.  We agree with the district court that Rams is distinguishable.  Unlike the provision at issue in Rams, the limitations provision here explicitly applies to "any claim . . . arising under, in connection with, or incident to this ticket or the voyage."  Indeed, the First Circuit indicated in its opinion that had this language—or something similar—been included in the limitation provision at issue in Rams, it would likely have reached the outcome we do here.  17 F.3d at 12.

Because Baer's claim is covered by the limitations provision in Section 13, he was required to bring his claim within one year or else "waive[] and release[] any right he . . . may have to make [the] claim."  Baer brought suit in January 2017, just more than two years after the incident occurred.  His claim is barred by the limitations provision.

**AFFIRMED.**

13